UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RICHARD SWEET, #512646,

        Petitioner,

v.                                      CASE NO. 2:09-CV-11241
                                       HONORABLE VICTORIA A. ROBERTS

PERCY CONERLY,

        Respondent.
_____/

**OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF
HABEAS CORPUS AND DENYING A CERTIFICATE OF APPEALABILITY**

**I.    Introduction**

Michigan prisoner Richard Sweet filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254 challenging his 2004 St. Clair County Circuit Court conviction for third-degree criminal sexual conduct, MICH. COMP. LAWS § 750.520d(1)(a), Petitioner is on parole; the Court sentenced him to 2 - 15 years in prison.

Petition raises claims concerning the effectiveness of trial counsel, his equal protection and due process rights, and cumulative error. Respondent answered contending that the writ should be denied.

The Court denies the Petition and a certificate of appealability.

**II.    Facts and Procedural History**

Petitioner's conviction arises from his sexual conduct with a 13-year-old girl at his home in Port Huron, Michigan on December 12, 2001. Petitioner was charged with two counts of third-

1

degree criminal sexual conduct arising from incidents in his home on December, 2001 and January, 2002. The trial court appointed counsel for Petitioner about a month before the original trial date of August 13, 2002. The court adjourned the trial date to allow counsel more preparation time. After several postponements, a trial date was set for January 28, 2003. On January 17, 2003, defense counsel filed a notice of alibi listing four witnesses. The prosecutor objected to the notice because it failed to provide the location for the alibi.

Petitioner was held in custody following his arrest, but posted bond on November 25, 2002. On January 28, 2003, defense counsel and the prosecutor appeared for trial; Petitioner did not. The court issued a bench warrant for his arrest. Petitioner was located in Iowa and extradited to Michigan. A new trial date was scheduled for August 10, 2004. The parties agreed to adjourn the trial to August 28, 2004 because some defense witnesses had not been subpoenaed.

At the start of trial, the court considered the prosecutor's objections to the alibi notice. Defense counsel withdrew the notice because the witnesses were unavailable. The trial court consequently ruled that Petitioner could not present an alibi defense.

The victim testified at trial that Petitioner was her mother's friend and her older sister's boyfriend for a short time. She testified that she and Petitioner had sex at his home before she went to middle school one day in December, 2001. She was 13 years old and in the seventh grade. She explained that they had vaginal intercourse while lying on top of a sleeping bag on the couch in Petitioner's basement. She said that it hurt and she bled a little bit. Afterward, she got dressed and left for school. She met her friend Jessica on the bus. She was upset and told Jessica what had happened at Petitioner's home. She made Jessica promise not to tell anyone. The victim testified that she and Petitioner had sex a second time at his home about a month later. She said it happened

before school but earlier in the morning. She went to Petitioner's basement at 5:30 or 6:30 in the morning, woke him up, had sex with him, and then went home to get ready for school. She said that the sex was less painful and she did not bleed.

Her mother found out, became very upset and contacted the police. The victim admitted that she only reported the first incident to the police and did not discuss the second incident until she testified at the preliminary examination in April, 2002. She explained that she was in trouble and did not want her mother to know about the second incident. The victim recalled having a physical examination about a week after the second incident and said it was embarrassing. She also indicated that she was in foster care for a period of time. The victim admitted that she could not recall specific dates and some details of the incidents due to the passage of time, but she was certain that they occurred one month apart. She said that her mother had previously pressed her for specific information about the incidents. The victim indicated that it was not her choice to pursue criminal charges and she was testifying because she had to.

Pediatric Nurse Practitioner Sharon Johnston testified that she examined the victim on January 17, 2002. She determined that the victim's hymen had three lacerations, which was consistent with sexual penetration. Johnston did not conduct a full pelvic examination or rape kit due to the victim's age and the lapse of time. She did not test for sexually transmitted diseases or pregnancy.

Jessica Thomas testified that she and the victim were friends and rode the bus together during the 2001-2002 school year when they were in middle school. She recalled seeing the victim leave Petitioner's home one morning to get on the bus. The victim was crying. When Jessica asked her what was wrong, the victim said that she and Petitioner had sex. The victim said that she knew what

she was doing, but when she told Petitioner to stop, he did not do so. Jessica could not recall the day when this occurred, but testified that winter was coming. Jessica knew Petitioner because she had been at his house a few times with the victim and her older sister, Jennifer.

Police officers testified about their investigation. Port Huron Police Officer Jennifer Sly took the victim's complaint on January 13, 2002. She spoke with the victim and her mother at their home and then interviewed the victim alone. The victim identified Petitioner in her statement. Officer Sly took a statement from Petitioner at his home that same day. Petitioner told her that the victim was only at his home with her older sister whom he had previously dated. Officer Sly did not obtain evidence from Petitioner's home due to the lapse of time between the reported incident and her investigation.

Port Huron Police Detective Elaine Butts testified that she interviewed Petitioner about the December 12, 2001 incident on January 31, 2002. Petitioner told her that the victim had been at his home several times with her older sister. He also said that she had visited him alone twice in December, 2001 for an eyebrow piercing. Petitioner claimed that he had micro cassette tapes of conversations from the victim's home that would clear him, but he never produced those tapes. Detective Butts explained that she did not request a rape kit from the victim or collect evidence from Petitioner's home because the victim had only reported the December 12, 2001 incident to police and she believed that too much time had passed since then to gather physical evidence. Detective Butts also testified that Petitioner did not appear for his scheduled trial date on January 28, 2003 and a bench warrant was issued for his arrest.

Petitioner testified in his own defense. He said that he was working for ANR Contracting in December 2001 and that he worked on jobs on a contractor's house and on a sewage filtration

plan in Detroit. He had to be at work at 7:00 a.m. and would usually leave his home at 5:30 or 5:45 a.m. to catch a bus to Detroit. Petitioner testified that he also did artwork and tattoos. He had tattoos on most of his body. His tattoos included his name, the number 32, and skulls on his stomach. He had his name tattooed on his stomach in 1995. Petitioner first met the victim's mother, Kim Yeagley, doing tattoos. He then met her daughters. He dated her older daughter, Jennifer, for a period of time while she and her baby stayed with him after her mother kicked her out of the house.

Petitioner denied have sex with the victim. He claimed that he was not at home when the incidents allegedly occurred. He recalled meeting with the police and said that he offered to allow them to test his couch and take a DNA sample, but they did not do so. He testified that the victim and her friend, Jessica Thomas, visited his home a few times and that he pierced the victim's eyebrow. Petitioner said he fled because none of his witnesses had been subpoenaed for trial. Petitioner admitted that he never gave any tapes to the police and that he never produced pay stubs or other employment records.

Michael Mehler, Petitioner's father, testified that Petitioner lived in a two-bedroom house with his grandfather during the relevant time. Petitioner maintained a tattoo shop with a separate entrance in the basement. Mehler also testified that Petitioner has "thousands" of tattoos, including several down his arms and his name in three-inch red letters on his abdomen.

Sharon O'Neill, Petitioner's neighbor across the street, testified that she could observe children waiting for the bus in front of Petitioner's home in 2001 and 2002. She was home and awake most mornings because she babysat young children. She never observed any children, other that Petitioner's own child, entering or exiting his home. She could not be specific about dates.

5

Kimberly Yeagley, the victim's mother, testified that she met Petitioner when he gave her a tattoo and they became friends. She visited him several times in his basement when her older daughter, Jennifer, lived with him. Yeagley testified that she was very upset with the victim and Petitioner after learning about their sexual conduct and she contacted the police. She acknowledged that the victim was placed in foster care after the incident.

During deliberations, the jury requested that portions of Petitioner's testimony regarding his employment with ANR Contracting be read back to them. The trial court denied the request, explaining that an alibi defense had been precluded for legal reasons and could not be considered. The jury convicted Petitioner on one count of third-degree criminal sexual conduct (December 12, 2001), but acquitted him on the other count (January 10, 2002). The trial court sentenced him to a term of 2 to 15 years in prison with credit for time served.

Petitioner filed an appeal of right with the Michigan Court of Appeals asserting that he was denied the effective assistance of trial counsel. The Michigan Court of Appeals denied relief and affirmed the conviction. *People v. Sweet*, No. 259608, 2006 WL 1009263 (Mich. Ct. App. April 18, 2006) (unpublished). Petitioner then filed an application for leave to appeal with the Michigan Supreme Court raising the same claim; it was denied. *People v. Sweet*, 477 Mich. 868, 721 N.W.2d 195 (2006).

Petitioner filed a motion for relief from judgment with the state trial court, asserting he was denied the effective assistance of counsel, that his equal protection and due process rights were violated, and that the cumulative effect of the errors warranted a new trial. The trial court denied the motion on July 20, 2007 and denied reconsideration on October 11, 2007. Petitioner then filed a delayed application for leave to appeal with the Michigan Court of Appeals, which was denied for

lack of merit. *People v. Sweet*, No. 281626 (Mich. Ct. App. May 15, 2008) (unpublished). Petitioner filed an application for leave to appeal with the Michigan Supreme Court, which was denied because Petitioner "failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Sweet*, 482 Mich. 1065, 757 N.W.2d 458 (2008).

This federal habeas action raises the following claims:

I. Trial counsel was ineffective for failing to properly notice, investigate, and present an alibi defense.

II. His equal protection and due process rights were violated because he is actually innocent, he was not allowed to present a defense based upon a provable alibi, and the authorities did not search for exculpatory DNA evidence.

III. Cumulative effect of error.

Respondent says the claims lack merit and/or are barred by procedural default.

**III. Standard of Review**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified 28 U.S.C. § 2241 *et seq.*, sets forth this standard of review for federal habeas actions:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d) (1996).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that

contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002). "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409. "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, _ U.S. _, 130 S. Ct. 1855, 1862 (2010) (quoting *Lindh*, 521 U.S. at 333, n. 7; *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)).

The Supreme Court recently held that "a state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, _ U.S. _, 131 S. Ct. 770, 786 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* ( citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003). Pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's

8

decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* Thus, in order to obtain habeas relief in federal court, a state prisoner must show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *See Williams*, 529 U.S. at 412; *see also Knowles v. Mirzayance*, _ U.S. _, 129 S. Ct. 1411, 1419 (2009) (noting that the Supreme Court "has held on numerous occasions that it is not 'an unreasonable application of clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by this Court") (quoting *Wright v. Van Patten*, 552 U.S. 120, 125-26 (2008) (per curiam)); *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). Section 2254(d) "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington*, 131 S. Ct. at 785. Furthermore, it "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16. While the requirements of "clearly established law" are to be determined solely by Supreme Court precedent, the decisions of lower federal courts may be useful in assessing the reasonableness of the state court's resolution of an issue. *See Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007) (citing *Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003)); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002).

9

Lastly, a state court's factual determinations are presumed correct on federal habeas review. *See* 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption only with clear and convincing evidence. *See Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

**IV.  Discussion**

    **A.  Ineffective Assistance of Counsel Claim**

Petitioner says trial counsel was ineffective for failing to properly notice, investigate, and present an alibi defense at trial.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court set forth a two-prong test for determining whether a habeas petitioner has received the ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. Second, the petitioner must establish that counsel's deficient performance prejudiced the defense. Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal. *Id.*

As to the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance" in order to prove deficient performance. *Id.* at 690. The reviewing court's scrutiny of counsel's performance is highly deferential. *Id.* at 689. Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 690. The petitioner bears the burden to overcome the presumption that the challenged actions were sound trial strategy. *Id.* at 689.

To satisfy the prejudice prong under *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different." *Id.* at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome. *Id.* "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

The Supreme Court recently confirmed that a federal court's consideration of ineffective assistance of counsel claims arising from state criminal proceedings is quite limited on habeas review due to the deference accorded trial attorneys and state appellate courts which review their performance. "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington*, 131 S. Ct. at 788 (internal and end citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard. *Id.* at 788.

Petitioner says that trial counsel was ineffective for failing to properly notice, investigate, and present an alibi defense. Well-established federal law requires that defense counsel conduct a reasonable investigation into the facts of a defendant's case, or make a reasonable determination that such investigation is unnecessary. *See Wiggins*, 539 U.S. at 522-23; *Strickland*, 466 U.S. at 691; *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). "American Bar Association standards ... also mandate counsel's duty to investigate all leads relevant to the merits of the case." *Blackburn v. Foltz*, 828 F.2d 1177, 1183 (6th Cir. 1987); *see also Rompilla v. Beard*, 543 U.S. 374, 387 (2005) (noting that the ABA standards provide guidance for determining the reasonableness of counsel's conduct). The duty to investigate "includes the obligation to investigate all witnesses who may

11

have information concerning his or her client's guilt or innocence." *Towns*, 395 F.3d 251 at 258. "A purportedly strategic decision is not objectively reasonable when the attorney has failed to investigate his options and make a reasonable choice between them." *Id*. (quoting *Horton v. Zant*, 941 F.2d 1449, 1462 (11th Cir. 1991)). Inattention or negligence, as opposed to reasoned strategic judgment, is inexcusable. *See Wiggins*, 539 U.S. at 526; *Sims v. Livesay*, 970 F.2d 1575, 1580-81 (6th Cir. 1992).

Decisions concerning the evidence to present and whether to call certain witnesses are generally presumed to be a matter of trial strategy. The failure to call witnesses or present evidence constitutes ineffective assistance of counsel only when it deprives a defendant of a substantial defense. *See Chegwidden v. Kapture*, 92 F. App'x 309, 311 (6th Cir. 2004); *Hutchison v. Bell*, 303 F.3d 720, 749 (6th Cir. 2002). When making strategic decisions, counsel's conduct must be reasonable. *See Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000); *see also Wiggins*, 539 U.S. at 522-23.

Applying the *Strickland* standard, the Michigan Court of Appeals denied relief on this claim. The court explained:

> To prevail on a claim of ineffective assistance of counsel, a defendant must show that his counsel's performance was objectively unreasonable and the representation was so prejudicial that he was deprived of a fair trial. To demonstrate prejudice, the defendant must show that, but for counsel's error, there was a reasonable probability that the result of the proceedings would have been different. This Court presumes that counsel's conduct fell within a wide range of reasonable professional assistance, and the defendant bears a heavy burden to overcome this presumption. [*People v. Watkins*, 247 Mich App 14, 30; 634 NW2d 370 (2001) (citations omitted).]
>
> The decision to argue one defense over another is a matter of trial strategy. *People v. Hedelsky*, 162 Mich App 382, 387; 412 NW2d 746 (1987). "Decisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy. This Court will not substitute its judgment for that of counsel regarding matters of trial strategy, nor will it assess counsel's competence

> with the benefit of hindsight." *People v. Rockey*, 237 Mich App 74, 76-77; 601 NW2d 887 (1999) (citations omitted). Ineffective assistance of counsel can take the form of a failure to investigate and present a particular defense if the defendant made a good-faith effort to avail himself of that defense and the defense was substantial. *People v. Kelly*, 186 Mich App 524, 526; 465 NW2d 569 (1990). "A substantial defense is one that might have made a difference in the outcome of the trial." Id. "[A] substantial alibi defense would be one in which defendant's proposed alibi witnesses verified his version." *Id*. at 527.
>
> The record shows that counsel filed a notice of alibi defense identifying four witnesses but omitted to state with particularity where defendant claimed to have been at the time the offense occurred. *See* MCL 768.20(1). Counsel later withdrew the notice due to the unavailability of the witnesses. Because the record is silent regarding the testimony these witnesses would have offered if called, defendant has not shown that their testimony would have benefitted the defense. Therefore, to the extent defendant contends that counsel was ineffective for failing to call these alibi witnesses, his claim must fail. *People v. Pratt*, 254 Mich App 425, 430; 656 NW2d 866 (2002); *People v. Avant*, 235 Mich App 499, 508; 597 NW2d 864 (1999).
>
> Defendant also contends that defendant was ineffective for failing to pursue an alibi through his own, otherwise unsupported, testimony. *See People v. Merritt*, 396 Mich 67, 87-89; 238 NW2d 31 (1976). However, the record does not show that defendant had an alibi for the offense, which occurred between 6:30 and 7:00 a.m. on December 12, 2001. Defendant testified that he began working for ANR Contracting in November 2001. He took the bus to the job site in Detroit and because he had to be at work by 7:00 a.m., he left home by 5:45 a.m. at the latest. But defendant did not testify that he worked for ANR full time or even that he was scheduled to work on December 12, 2001. Although defendant later volunteered that he had told a previous lawyer that he was not at home on the day of the incident, he did not say where he was, much less that he was at work or on his way there. Therefore, his limited testimony does not show that he was not at home on the morning the offense occurred. Because there is nothing in the record to show that defendant had a substantial alibi defense, counsel was not ineffective for failing to pursue such a defense.

*Sweet*, 2006 WL 1009263 at *1-2.

This decision is neither contrary to *Strickland* nor an unreasonable application thereof. The record indicates that trial counsel filed a notice of alibi in a timely fashion, but was then unable to obtain alibi witnesses for trial. Given such circumstances, it was reasonable trial strategy for counsel to withdraw the notice of alibi and to pursue an alternate defense at trial – essentially

pointing to inconsistencies in the victim's statements and challenging her credibility, pointing to the lack of DNA or physical evidence, and presenting Petitioner's own testimony denying that he committed the offenses. As the Supreme Court recently stated, "[t]here comes a point where a defense attorney will reasonably decide that another strategy is in order, thus making particular investigations unnecessary. . . .Those decisions are due a heavy measure of deference." *Cullen v. Pinholster*, _ U.S. _, 131 S. Ct. 1388, 1407 (2011) (reversing grant of habeas relief on ineffective assistance of counsel claim) (citations omitted). It was also reasonable for counsel not to further pursue an alibi defense through Petitioner's own testimony given that he was unable to provide any evidence to support his claim that he was working or traveling to work during the relevant time period on December 12, 2001.

Moreover, even assuming that trial counsel was deficient in some way for failing to more thoroughly investigate or pursue an alibi defense, Petitioner has failed to demonstrate that he was prejudiced by counsel's conduct. He has offered no evidence, other than his own conclusory statements, to support his claimed alibi. It is well-settled that conclusory allegations, without evidentiary support, do not provide a basis for habeas relief. *See Cross v. Stovall*, 238 F. App'x 32, 39-40 (6th Cir. 2007); *Prince v. Straub*, 78 F. App'x 440, 442 (6th Cir. 2003); *Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998) (conclusory allegations of ineffective assistance of counsel do not justify federal habeas relief); *see also Washington v. Renico*, 455 F.3d 722, 733 (6th Cir. 2006) (bald assertions and conclusory allegations do not provide sufficient basis for an evidentiary hearing on habeas review). Additionally, as noted by the Michigan Court of Appeals, even Petitioner's own testimony about his employment with ANC Contracting did not establish an alibi for the specific day at issue in this case – December 12, 2001.

Petitioner fails to establish that trial counsel was ineffective under the *Strickland* standard. More pointedly -- for the purpose of habeas review -- he fails to establish that the state court's decision is unreasonable; habeas relief is not warranted.

### B.      Equal Protection and Due Process

Petitioner says he is entitled to habeas relief because his equal protection and due process rights were violated because he is actually innocent, he was not allowed to present a defense based upon a provable alibi, and the authorities did not search for exculpatory DNA evidence. Respondent says that these claims are barred by procedural default because Petitioner first raised them in his post-conviction motion for relief from judgment and the Michigan Supreme Court denied relief under Michigan Court Rule 6.508(D).

Under the procedural default doctrine, a federal habeas court will not review a question of federal law if the state court's decision rests on a substantive or procedural state law ground that is independent of the federal question and is adequate to support the judgment. *See Coleman v. Thompson*, 501 U.S. 722, 729 (1991). However, "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar." *Harris v. Reed*, 489 U.S. 255, 263 (1989). If the last state court judgment contains no reasoning, the federal habeas court must look to the last reasoned state court judgment rejecting the federal claim and apply a presumption that later unexplained orders upholding the judgment or rejecting the same claim rested upon the same ground. *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).

The Michigan Supreme Court denied Petitioner leave to appeal on his post-conviction motion because he "failed to meet the burden of establishing entitlement to relief under MCR

15

6.508(D)." The order does not refer to subsection (D)(3) or mention Petitioner's failure to raise these issues on direct appeal. Because the form order citing Michigan Court Rule 6.508(D) is ambiguous as to whether it refers to a procedural default or a denial of relief on the merits, the order is unexplained. *See Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010). The Court must "therefore look to the last reasoned state court opinion to determine the basis for the state court's rejection" of the claims. *Id*. The Michigan Court of Appeals denied leave to appeal "for lack of merit in the grounds presented" and the state trial court denied relief on the merits of the claims without citing Michigan Court Rule 6.508(D)(3) or any failure to raise the claims on direct appeal. Consequently, these claims are not procedurally defaulted, and the Court will address their merits.

Petitioner asserts that his equal protection and due process rights were violated because he is innocent, he was unable to present an alibi defense, and the authorities failed to search for exculpatory DNA evidence. The state trial court denied relief on these claims, finding that they all derived from counsel's failure to present an alibi defense, a claim which was addressed on direct appeal and denied on the merits. Upon reconsideration, the Court explained that the authorities had no duty to seek or find exculpatory evidence and all of Petitioner's claims lacked merit. *See* Trial Ct. Opin. *supra*.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. First, Petitioner has not presented evidence to demonstrate his actual innocence. As noted, conclusory allegations, without evidentiary support, do not provide a basis for habeas relief. *See Cross*, 238 F. App'x at 39-40; *Prince*, 78 F. App'x at 442; *Workman*, 178 F.3d at 771; *see also Washington*, 455 F.3d at 733. Moreover, the victim's testimony, the corroborating testimony by witnesses Johnston and Thomas, and the evidence of

Petitioner's flight, provided significant evidence of his guilt at trial.

Second, the trial court only precluded Petitioner from presenting an alibi defense because defense counsel withdrew the alibi notice after being unable to produce the alibi witnesses and being unable to substantiate Petitioner's alibi. As explained *supra*, such action did not deprive Petitioner of a substantial defense; he did not provide testimonial or documentary evidence to support his claimed alibi. To be sure, he still has not offered evidence -- other than his own conclusory assertions -- to support his claim.

While the right to present a defense has long been recognized as "a fundamental element of due process," *Washington v. State*, 388 U.S. 14, 19 (1967), "a defendant's right to present evidence is not unlimited, but rather is subject to reasonable restrictions." *United States v. Scheffer*, 523 U.S. 303, 308 (1998). A defendant "does not have an unfettered right to offer evidence that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." *Montana v. Egelhoff,* 518 U.S. 37, 42 (1996) (quoting *Taylor v. Illinois*, 484 U.S. 400, 410 (1988)). State rules excluding evidence from criminal trials "do not abridge an accused's right to present a defense so long as they are not 'arbitrary' or 'disproportionate to the purposes they are designed to serve.'" *Scheffer,* 523 U.S. at 308 (internal citations omitted). "A defendant's interest in presenting . . . evidence may thus bow to accommodate other legitimate interests in the criminal trial process." *Id*. (internal quotations omitted).

The Supreme Court has held that trial courts may constitutionally preclude defendants from offering otherwise relevant evidence if they fail to comply with procedural rules that require notice to be given. *See Michigan v. Lucas*, 500 U.S. 145, 152-53 (1991); *Taylor v. Illinois*, 484 U.S. 400, 417 (1988); *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973). Specifically, with regard to a

17

defendant's failure to provide notice of an alibi, the Court concluded that a trial court may constitutionally preclude an accused from calling an alibi witness if he fails to comply with the state's notice-of-alibi rule. *See Williams v. Florida*, 399 U.S. 78, 81-82 (1970); *see also Dolan v. Donnell*, No. 06-CV-5891, 2010 WL 5491101, *18, 20 (E.D.N.Y. Dec. 30, 2010) (ruling that trial court's preclusion of alibi testimony did not violate habeas petitioner's Sixth Amendment rights and counsel's withdrawal of alibi notice was not ineffective).

In determining whether the exclusion of evidence infringes upon a defendant's rights, the question is not whether the excluded evidence would have caused the jury to reach a different result. Rather, the question is whether the defendant was afforded "a meaningful opportunity to present a complete defense." *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (quoting *California v. Trombetta*, 467 U.S. 479, 485 (1984)); *see also Chambers v. Mississippi*, 410 U.S. 284, 302 (1973).

Petitioner was not deprived of a substantial defense. He was able to contest the victim's credibility at trial and testify that he did not commit the charged offenses. The trial court did not violate his constitutional rights by complying with state procedural notice-of-alibi rules, resulting in the inability of the jury to consider his alibi defense.

Finally, Petitioner cannot prevail on his claim that his constitutional rights were violated by a failure to obtain exculpatory DNA evidence. There is no general constitutional right to discovery in a criminal case. *See Weatherford v. Bursey*, 429 U.S. 545, 559 (1977). While due process requires a prosecutor to disclose exculpatory evidence, *see Brady v. Maryland*, 373 U.S. 83, 87 (1963); *see also Kyles v. Whitley*, 514 U.S. 419, 432-36 (1995); *United States v. Bagley*, 473 U.S. 667, 682 (1985), it "does not require the government to create exculpatory material that does not exist." *Stadler v. Curtin*, 682 F. Supp. 2d 807, (E.D. Mich. 2010) (citing *United States v.*

*Sukumolachan*, 610 F.2d 685, 687 (9th Cir. 1980); *Richards v. Solem*, 693 F.2d 760, 766 (8th Cir. 1982)); *see also Dallas v. Holmes*, 137 F. App'x 746, 754 (6th Cir. 2005). Neither due process nor equal protection requires the police or the prosecution to search for exculpatory evidence. Moreover, Petitioner's claim that further investigation or DNA testing would have uncovered exculpatory evidence is entirely speculative and conclusory. Petitioner bears the burden to establish entitlement to habeas relief. He has not offered exculpatory evidence in support of his assertions. Habeas relief is not warranted.

### C. Cumulative Error

Petitioner says that he is entitled to habeas relief based upon the cumulative effect of the alleged errors committed at trial. Petitioner cannot establish that he is entitled to habeas relief based upon cumulative error; he fails to demonstrate an underlying constitutional violation. *See Gillard v. Mitchell*, 445 F.3d 883, 898 (6th Cir. 2006). Moreover, the Sixth Circuit noted that the Supreme Court "has not held that distinct constitutional claims can be cumulated to grant habeas relief." *Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir. 2002). The state courts' denial of relief is neither contrary to Supreme Court precedent nor an unreasonable application thereof. Habeas relief is not warranted.

### V. Conclusion

For the reasons stated, the Court concludes that Petitioner is not entitled to federal habeas relief on the claims contained in his petition. Accordingly, the Court **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus.

Before Petitioner may appeal the Court's decision, a certificate of appealability ("COA") must issue. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A COA may issue "only if the

applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a federal district court denies relief on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). A court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the habeas claims. *Id*. at 336-37.

Based on its examination, the Court concludes that Petitioner fails to make a substantial showing of the denial of a constitutional right as to his habeas claims. Accordingly, the Court **DENIES** a certificate of appealability.

    **IT IS ORDERED.**

                                              s/Victoria A. Roberts
                                              Victoria A. Roberts
                                              United States District Judge

Dated: July 12, 2011

---

The undersigned certifies that a copy of this document was served on the attorneys of record and Richard Sweet by electronic means or U.S. Mail on July 12, 2011.

s/Linda Vertriest
Deputy Clerk

---